**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| West Brazos Stewart Food Markets, LLC, *et al.*,[1] | Case No. 25-80317 (ARP) |
| Debtors. | **(Jointly Administered)** |

**DEBTORS' APPLICATION TO EMPLOY CHART CAPITAL MANAGEMENT LLC
AS FINANCIAL ADVISOR TO THE DEBTORS**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this Application (this "Application"):

**I.      Relief Requested**

1.      The Debtors seek authority to employ Chart Capital Management LLC  as Financial Advisor to the Debtors in accordance with the terms and conditions set forth in the Engagement Letter, dated June 19, 2025, (the "Engagement Letter"), attached as **Exhibit A** to this Application.

---

[1] The Debtors in these chapter 11 cases are West Brazos Stewart Food Markets, LLC (85-2221853), West Brazos Stewart Property Holdings of Brazoria, LLC (85-2222120), and West Brazos Stewart Property Holdings of Sweeny, LLC (85-2262161). The Debtors' service address in these chapter 11 cases is PO Box 979, Brazoria, Texas 77422.

1

In support of this Application, the Debtors also attach the Declaration of Jeffrey Shulse as **Exhibit B** to this Application.

## II.   Jurisdiction and Venue

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of the Debtors' case is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b). This Court has the constitutional authority to enter a final order in this matter and the Debtors consent to entry of a final order by this Court.

3.      The bases for the relief requested are sections 327(a), 328(a), and 1107 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Bankruptcy Rule 2014-1.

## III.   Background

4.      The Debtors are a family-owned grocery store that has been serving Brazoria, Texas and the surrounding areas since 1975. The Debtors filed this case to deal with the debt on their real property by either selling their real property or restructuring the debt. The Debtors are also working to reduce certain expenses in order to increase cash flow and stabilize their business for the long-term. A more detailed description of these chapter 11 cases is set forth in the *Declaration of Tina Stewart in Support of Chapter 11 Petitions and First Day Motions* at Docket No. 15.

5.      On July 11, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11, title 11 of the United States Code (the "Bankruptcy Code"). The Debtors remain in possession of their property and are operating as Debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for appointment of a trustee or examiner and no official committee has been established in this case.

## IV.   Chart Capital Management's Qualifications

6.      Based on the complexities associated with administering these chapter 11 cases and the estates, particularly where the Debtors do not have financial or accounting employees, the Debtors have determined that they require the assistance of a professional with specialized experience in bankruptcy and financial advisory services. The Debtors seek permission to retain and employ Chart Capital Management.

7.      Chart Capital Management and its principal consultant, Jeffrey Shulse, have over 25 years of financial, legal and operational experience with small to mid-market companies in a variety of industries.  Engagements have included:

a.   financial modeling, cash flow forecasting, and DIP/financing analysis to support strategic decision-making during Chapter 11 proceedings, ensuring operational continuity and creditor confidence;

b.   partnering with trustee, legal and restructuring advisors to develop and implement a court-approved reorganization plan, including debt restructuring, asset sales, and operational turnaround strategies;

c.   managed financial communications to the creditor committees and debtor representatives, providing transparency and updates on financial results, recovery estimates, and key restructuring milestones;

d.   developed detailed EBITDA projections, multi-year operating plans, and budgets for small start-up companies, delivering key financial models and analyses used in offering documents to attract private equity and private debt financing; and

e.   most recently, Mr. Shulse served in a Financial Advisor capacity in the Free Speech Systems LLC bankruptcy in the Southern District of Texas, Case No. 22-60043.

## V.   Scope of Services

8.      Chart Capital Management will provide financial advisory services and restructuring oversight, pursuant to the terms of its Engagement Letter, to assist the Debtors throughout these chapter 11 cases. More specifically, Chart Capital Management will provide the

3

following non-exhaustive list of services as necessary to assist the Debtors with their chapter 11 cases and exit plan:

a. supervise and, if necessary, assist the Debtors in the development and administration of their short and long-term cash flow forecasting and related methodologies, as well as their cash management planning;

b. provide such assistance as is reasonable may be required by management of the Debtors in connection with (i) development of a business plan, (ii) any restructuring plans and strategy alternatives, including sales or leases, intended to maximize value and (iii) any related forecasts that may be required by the Debtors or by creditor constituencies in connection with negotiation in these chapter 11 cases;

c. supervise and, if necessary, assist the Debtors' other professionals in the restructuring process or who are working for the Debtors' various stakeholders to coordinate their effort and individual work product to be consistent with the Debtors' overall restructuring goals;

d. assist, if required, the Debtors in communications and negotiations with its outside constituents, including creditors, trade vendors and their respective advisors;

e. monitor and manage the Debtor's cash management, including bank accounts containing the Debtor's funds, including the addition or removal of signatories to the Debtor's account, authorization of fund transfers, and delegation of such authority to others;

f. provide assistance as necessary and reasonable to guide the Debtors through a sale process, including discussions with any broker or buyers and forecasting analysis of sale or lease terms and price and review of relevant diligence materials; and

g. provide any other services as are reasonable and customary for a financial advisor in connection with a chapter 11 reorganization or that are reasonable and necessary for these chapter 11 cases.

## VI.    No Duplication of Services

9.    The services to be provided by Chart Capital Management will complement and not duplicate any service to be rendered by any other professional retained in this chapter 11 case.

## VII.    Chart Capital Management is Disinterested

10.    Pursuant to section 101(14), Chart Capital Management is not a creditor, equity security holder, or an insider of the Debtor, *see* 11 U.S.C. § 101(14)(A), is not and was not an

officer, director, or employee of the Debtor. *See* 11 U.S.C. § 101(14)(B). Chart Capital Management does not hold any interest adverse to the Debtors or to any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. *See* 11 U.S.C. § 101(14)(C). To the best of Debtors' knowledge, information and belief, Chart Capital Management is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not have any connections with the Debtors, its creditors, other parties in interest, their respective counsel or accountants, or the United States Trustee or any other person employed in the Office of the United States Trustee and does not hold any interest adverse to the Debtors' estates. To the extent any new or relevant facts or relationships affecting the disinterestedness of Chart Capital Management during the period of its retention by the Debtors, the Debtors are advised that Chart Capital Management will use reasonable efforts to promptly file a supplemental declaration.

### VIII.  Professional Compensation and Expense Reimbursement

11.     Chart Capital Management's decision to accept this engagement is conditioned upon the ability to be retained in accordance with its customary terms and conditions of employment as provided in the Engagement Letter. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors may retain Chart Capital Management on reasonable terms and conditions. The terms and conditions set forth in the Engagement Letter, which are similar to the terms and conditions Chart Capital Management offers to similar clients for similar services are reasonable.[2]

        a.  *Hourly Fees*. The fees for the services of Chart Capital Management will be based on actual hours incurred and the hourly rates for 2025 are below. Chart Capital

---

[2] Except that Chart Capital Management did give a discount on its hourly rate(s) for this engagement, which is reflected in the discounted rate(s) in the Engagement Letter.

Management proposes to bill in .5 increments during the pendency of these chapter 11 cases.

| Category of Work | Hourly Rate |
|---|---|
| Financial and Business Consulting/Analysis | $110.00 |
| Federal, State, or Sales Tax Research | $200.00 |
| Federal, States, or Sales Tax Preparation | $85.00 |
| M&A / Buy or Sell Consulting | $300.00 |

b. *Expenses*. In addition to compensation for professional services, Chart Capital Management will seek reimbursement for reasonable, necessary, documented out-of-pocket expenses incurred in connection with this chapter 11 case.

12.     To the best of the Debtors' knowledge, there is no agreement or understanding between Chart Capital Management or any nonaffiliated person or entity for sharing compensation received to be received in connection with the services to be provided in these chapter 11 cases. Chart Capital Management will also be filing fee applications pursuant to section 330 and therefore any fees will be subject to review.

13.     Prior to the Petition Date, the Debtors paid Chart Capital Management $3,535.00 for time billed and services provided prior to filing. Chart Capital Management did not receive and is not holding any retainer post-petition.

### IX.     Indemnification

14.     The Engagement Letter contains standard indemnification language with respect to the services to be performed. The indemnification provisions contained in the Engagement Letter are customary and reasonable and negotiated by the Debtors and Chart Capital Management in good faith and at arm's length. The provisions related to indemnification in the Engagement Letter

6

are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require the services of Chart Capital Management to successfully reorganize.

### X.  Relief and Authority

15.    The Debtors seek approval of the fee structure provided in the Engagement Letter pursuant to section 327(a) of the Bankruptcy Code which provides that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable term or conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or a contingent fee basis."  11 U.S.C. § 328(a).  The Debtors believe the fee structure set forth in the Engagement Letter is reasonable and should be approved under section 327(a) of the Bankruptcy Code.  Chart Capital Management will bill hourly in .5 increments. The retention of Chart Capital Management as the Debtor's financial advisor is in the best interest of the Debtors and their estates and is a sound exercise of the Debtors' business judgment.

16.    The Debtors request authority to employ Chart Capital Management as set forth in this Application and further request any additional relief to which they may be entitled.

**Dated:  August 11**                    **West Brazos Stewart Food Markets, LLC et al.**

By: /s/ Tina Stewart

Name: Tina Stewart, Manager

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Application will be served upon the parties listed below on August 11, 2025, via United States regular mail, postage paid first class and via the Court's ECF/PACER system:

**Debtor**

West Brazos Stewart Food Markets, LLC
PO Box 979
Brazoria, Texas 77422

**Office of the United States Trustee**
U.S. Trustee
515 Rusk Avenue, Suite 3516
Houston, TX 77002

/s/ *Genevieve M. Graham*
Genevieve M. Graham

8

9

**Exhibit A**

**Engagement Letter**



Chart Capital Management LLC
2339 Commerce Street #160
Houston TX 77002
EMAIL **jshulse@chartcapitalmgmt.com**

June 19, 2025

We are pleased that you have requested Chart Capital Management (hereinafter referred to as the "Consultant") to provide financial and business consulting services to Stewart's Food Stores (hereinafter referred to as the "Client") and thank you for the opportunity to serve you. The purpose of this letter and the attached Terms and Conditions (collectively, the "Agreement") is to set forth the scope of our engagement as a business advisor to you, to confirm that we are in mutual agreement with respect to the same, to set forth the financial arrangements pursuant to our engagement, and to verify your approval of such financial arrangements as follows:

**Scope of Engagement**
The Consultant will perform those consulting and business advisory services which you request that it perform; however, it is our understanding that you are presently engaging the Consultant to work on profitability analysis and going concern issues around a potential bankruptcy filing.  We will not do any work or prepare any work product without your written authorization.

We will prepare your project deliverables based upon information and representations that you provide to us. We will not audit or otherwise verify the data you submit to us, although we may ask you to clarify certain information.  You agree to indemnify and hold Consultant harmless with respect to any and all claims arising from the use of the project deliverables regardless of the nature of the claim, including the negligence of any party.  Our engagement does not include any procedures specifically designed to detect errors, fraud, or theft. Therefore, our engagement cannot be relied upon to disclose such matters.  Ultimately, the Client is responsible for developing and implementing internal controls applicable to your operations.

We would expect to continue to perform our services under the arrangements discussed above from year to year, unless for some reason you and we find that some change is necessary. We will, of course, be happy to provide you with any other services you may find necessary or desirable.

**Fees and Hourly Rates**
Our billing practice is to charge for our services based primarily on the amount of time devoted to a matter at hourly rates for the particular issue involved. These hourly rates are based upon experience, expertise, and standing. Our current regular rates for attorneys vary by subject matter as follows:

| | |
|---|---|
| Financial and Business Consulting / Analysis | $110.00 / hour |
| Federal, State, or Sales Tax Research | $200.00 / hour |
| Federal, State, or Sales Tax Preparation | $85.00 / hour |
| M&A / Buy or Sell Consulting | $300.00 / hour |

We reserve the right to adjust our billing rates from time to time without advance notice. If at any time you have a question concerning your billing, you should feel free to contact me for clarification. We believe our hourly rates are comparable with rates charged for the same kinds of work by consultants, accountants, lawyers or other professionals of similar experience, and expertise.

Page **1** of **5**



**Expenses**

The performance of business and financial consulting services can involve costs and expenses that you will either pay directly or for which you will reimburse us should we pay these costs and expenses on your behalf. In the normal course of our work, we will bill you for smaller expense items, such as filing fees, computerized research, postage, messenger services, field expenses (i.e., mileage, meals, parking, lodging, etc.), and other charges and expenses. In circumstances involving any substantial expenditures involving outside vendors such as depositions, preparation, or air fare (or substantial costs such as extended field expenses), we will require that you advance those sums to us before we expend them or we may require that you directly reimburse the vendor.

**Monthly Statements and Payment Terms**

Our practice is to send a monthly statement for services rendered and for disbursements incurred for our client's account during the previous month, and we request payment in U. S. Dollars. The detail in the monthly statements will inform you of both the nature of the work and of the fees and disbursements being incurred. Our fee structure is based upon the premise that all statements are due and payable upon receipt, but in any event, no later than thirty (30) days thereafter. We reserve the right to charge at the rate of ten percent (10%) percent per annum a monthly late payment fee computed from thirty (30) days after issuance date until paid. We do our best to see that our clients are satisfied, not only with our service, but also with the reasonableness of the fees charged and the disbursements charged for those services. Therefore, if you have any question about a statement or the basis for our fee to you, you should raise it promptly for discussion.

Please review and digitally sign this letter below to indicate that it is in accordance with your understanding of the arrangements. We will not initiate services until we receive the executed Agreement.

We want to express our appreciation for this opportunity to be of service to Stewart's Food Stores .

Yours sincerely,

Jeffrey Shulse
Chart Capital Management LLC

**AGREED AND ACCEPTED:**

Tina Stewart

Stewart's Food Stores

Page **2** of **5**



## TERMS & CONDITIONS

This addendum to the engagement letter describes our standard terms and conditions ("Terms and Conditions") related to our provision of services to you. This addendum, and the accompanying engagement letter, comprises your agreement with us.

("Agreement"). If there is any inconsistency between the engagement letter and this Terms and Conditions Addendum, the engagement letter will prevail to the extent of the inconsistency.

**We reserve the right to suspend or terminate our work for non-payment of fees. We will not file or mail, or deliver tax returns, financial statements or other deliverables if your account is past due.**

### Conflicts of Interest
If we, in our sole discretion, believe a conflict has arisen affecting our ability to deliver services to you in accordance with either the ethical standards of Consultant or the ethical standards of our profession, we may be required to suspend or terminate our services without issuing our work product.

### Client Portals
To enhance our services to you, and facilitate document sharing, we will utilize Dropbox, a collaborative, virtual workspace in a protected, online environment. Dropbox permits real-time document sharing and storage across geographic boundaries and time zones and allows both the Consultant and the Client to share data, engagement information, knowledge, and deliverables in a protected environment.

You agree that we have no responsibility for the activities of Dropbox and agree to indemnify and hold us harmless with respect to any and all claims arising from or related to the operation of Dropbox. While Dropbox serves as a backup for your files, we recommend that you also maintain your own backup files of these records. Files uploaded to Dropbox may be deleted after 90 days from the date they are uploaded.

If you decide to transmit your confidential information to us in a manner other than the Dropbox secure portal, you accept responsibility for any and all unauthorized access to your confidential information. If you request that we transmit confidential information to you in a manner other than a secure portal, you agree that we are not responsible for any liability including but not limited to,
(a) any loss or damage of any nature, whether direct or indirect, that may arise as a result of our sending confidential information in a manner other than a secure portal, and
(b) any damages arising as a result of any virus being passed on or with, or arising from any alteration of, any email message.

### Electronic Data Communication and Storage
In the interest of facilitating our services to you, we may send data over the Internet, store electronic data via computer software applications hosted remotely on the Internet, or utilize cloud-based storage. Your confidential electronic data may be transmitted or stored using these methods. In using these data communication and storage methods, the Consultant employs measures designed to maintain data security. We use reasonable efforts to keep such communications and electronic data secure in accordance with our obligations under applicable laws, regulations, and professional standards.

You recognize and accept that we have no control over the unauthorized interception or breach of any communications or electronic data once it has been transmitted or if it has been subject to unauthorized access while stored, notwithstanding all reasonable security measures employed by us. You consent to our use of these electronic devices and applications during this engagement.

Page **3** of **5**



## Ownership of Documents

All original documents obtained from the client arising from the engagement shall remain the property of the client and will be returned at the conclusion of the engagement. However, we reserve the right to make a reasonable number of copies of the original documents for our records. All records developed or created by the Consultant are the property of the Consultant. Our copies of your records and documents are not a substitute for your own records and do not mitigate your record retention obligations under any applicable laws or regulations.

## Reliance on Written Advice Only.

The Consultant will provide, on request, written advice to our clients regarding accounting and tax matters. We recommend that if there is any question regarding a tax or accounting matter that you request our advice in writing to prevent miscommunications.

## Third Party Service Providers or Subcontractors

In the interest of enhancing our availability to meet your professional service needs while maintaining service quality and timeliness, we may use a third party service provider to assist us. This may include provision of your confidential information to the third party service provider. We require our third party service providers to have established procedures and controls designed to protect client confidentiality and maintain data security. As the paid provider of professional services, Consultant remains responsible for exercising reasonable care in providing such services, and our work product will be subjected to Consultant's customary quality control procedures.

By accepting the terms and conditions of our engagement, you are providing your consent and authorization to disclose your confidential information to a third party service provider, if such disclosure is necessary to deliver professional services or provide support services to Consultant.

## Work Outside of Scope.

Your engagement letter describes the scope of the work that we will provide to you for the fees discussed in the letter. We will perform these services only for Client. If additional work is needed or requested that is outside of that scope, we will discuss it with you, and arrive at an estimate of those services before we incur the additional costs. Our invoices will be rendered as work progresses and are payable on presentation.

## Statute of Limitations

You agree that any claim arising out of this Agreement shall be commenced within one (1) year of the delivery of the work product to you, regardless of any longer period of time for commencing such claim as may be set by law. A claim is understood to be a demand for money or services, the service of a suit, or the institution of arbitration proceedings against the Company.

## Termination and Withdrawal

We reserve the right to withdraw from the engagement without completing services for any reason, including, but not limited to, non- payment of fees, your failure to comply with the terms of this Agreement, or as we determine professional standards require. If our work is suspended or terminated, you agree that we will not be responsible for your failure to meet governmental and other deadlines, or for any liability, including but not limited to, penalties or interest that may be assessed against you resulting from your failure to meet such deadlines.

If this Agreement is terminated before services are completed, you agree to compensate us for the services performed and expenses incurred through the effective date of termination.



**Assignment**

All parties acknowledge and agree that the terms and conditions of this Agreement shall be binding upon and inure to the parties' successors and assigns, subject to applicable laws and regulations.

**Designation of Venue and Jurisdiction**

In the event of a dispute, the courts of the state of Texas shall have jurisdiction. You also agree that the law of the state of Texas shall govern all such disputes.

**Entire Agreement**

The engagement letter, including this Terms and Conditions Addendum and any other attachments, encompass the entire agreement of the parties and supersedes all previous understandings and agreements between the parties, whether oral or written.

**Any modification to the terms of this Agreement must be made in writing and signed by both parties.**

**Client Contact.**

For any elections, representations, and/or changes in the engagement scope, please contact us at 713-213-5301 or jshulse@chartcapitalmgmt.com

**Exhibit B**

**Declaration of Jeffrey Shulse**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| West Brazos Stewart Food Markets, LLC, *et al.*,[3] | Case No. 25-80317 (ARP) |
| Debtors. | **(Jointly Administered)** |

**DECLARATION OF JEFFREY SHULSE IN SUPPORT OF DEBTORS' APPLICATION
TO EMPLOY CHART CAPITAL MANAGEMENT LLC
AS FINANCIAL ADVISOR TO THE DEBTORS**

I, Jeffrey Shulse, declare pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1.      I am the principal consultant at Chart Capital Management, LLC, which has its principal place of business at 2339 Commerce St., Houston, TX 77002.

2.      I submit this declaration in support of the *Debtors' Application to Employ Chart Capital Management LLC as Financial Advisor to the Debtors* (the "Application") by which the Debtors seek to employ Chart Capital Management as of the Petition Date[4] on the terms and conditions set forth in the Engagement Letter, a copy of which is attached to the Application as Exhibit A. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration.

17.      I am well qualified to provide services to the Debtors and represent the Debtors' interests in these chapter 11 cases. Based on the complexities associated with administering these

---

[3] The Debtors in these chapter 11 cases are West Brazos Stewart Food Markets, LLC (85-2221853), West Brazos Stewart Property Holdings of Brazoria, LLC (85-2222120), and West Brazos Stewart Property Holdings of Sweeny, LLC (85-2262161). The Debtors' service address in these chapter 11 cases is PO Box 979, Brazoria, Texas 77422.

[4] Capitalized terms not defined in this Declaration are defined in the Application.

chapter 11 cases and the estates, particularly where the Debtors do not have financial or accounting employees, the Debtors have determined that they require the assistance of a professional with specialized experience in bankruptcy and financial advisory services.

18.     I have over 25 years of financial, legal and operational experience with small to mid-market companies in a variety of industries.  My engagements have included:

    a.  financial modeling, cash flow forecasting, and DIP/financing analysis to support strategic decision-making during Chapter 11 proceedings, ensuring operational continuity and creditor confidence;

    b.  partnering with trustee, legal and restructuring advisors to develop and implement a court-approved reorganization plan, including debt restructuring, asset sales, and operational turnaround strategies;

    c.  managed financial communications to the creditor committees and debtor representatives, providing transparency and updates on financial results, recovery estimates, and key restructuring milestones; and

    d.  developed detailed EBITDA projections, multi-year operating plans, and budgets for small start-up companies, delivering key financial models and analyses used in offering documents to attract private equity and private debt financing.

3.     Most recently, I served in a Financial Advisor capacity in the Free Speech Systems LLC bankruptcy in the Southern District of Texas, Case No. 22-60043.

## I.     Scope of Services

4.     As set out in the Application, I will provide the following services:

    a.  supervise and, if necessary, assist the Debtors in the development and administration of their short and long-term cash flow forecasting and related methodologies, as well as their cash management planning;

    b.  provide such assistance as is reasonable may be required by management of the Debtors in connection with (i) development of a business plan, (ii) any restructuring plans and strategy alternatives, including sales or leases, intended to maximize value and (iii) any related forecasts that may be required by the Debtors or by creditor constituencies in connection with negotiation in these chapter 11 cases;

    c.  supervise and, if necessary, assist the Debtors' other professionals in the restructuring process or who are working for the Debtors' various

12

stakeholders to coordinate their effort and individual work product to be consistent with the Debtors' overall restructuring goals;

d. assist, if required, the Debtors in communications and negotiations with its outside constituents, including creditors, trade vendors and their respective advisors;

e. monitor and manage the Debtor's cash management, including bank accounts containing the Debtor's funds, including the addition or removal of signatories to the Debtor's account, authorization of fund transfers, and delegation of such authority to others;

f. provide assistance as necessary and reasonable to guide the Debtors through a sale process, including discussions with any broker or buyers and forecasting analysis of sale or lease terms and price and review of relevant diligence materials; and

g. provide any other services as are reasonable and customary for a financial advisor in connection with a chapter 11 reorganization or that are reasonable and necessary for these chapter 11 cases

5. I have the experience and expertise to assist the Debtors in Application and the Engagement Letter dated June 19, 2025

## II.      No Duplication of Services

6. I believe that the services to be provided under the Engagement Letter will complement and not duplicate the services to be rendered by any other professional retained in these chapter 11 cases.

7. The decision to accept this retention to provide services to the Debtors is conditioned upon the ability to be retained in accordance with customary terms and conditions of employment, compensation, and reimbursement for out-of-pocket expenses in accordance with customary billing practices as set forth in the Engagement Letter.

## III.      Professional Compensation and Reimbursement of Expenses

8. I will bill hourly for my services in .5 hour increments.

a. *Hourly Fees*. The fees for the services of Chart Capital Management will be based on actual hours incurred and the hourly rates for 2025 are below.

| Category of Work | Hourly Rate |
|---|---|
| Financial and Business Consulting/Analysis | $110.00 |
| Federal, State, or Sales Tax Research | $200.00 |
| Federal, States, or Sales Tax Preparation | $85.00 |
| M&A / Buy or Sell Consulting | $300.00 |

b.    *Expenses*. In addition to compensation for professional services, Chart Capital Management will seek reimbursement for reasonable, necessary, documented out-of-pocket expenses incurred in connection with this chapter 11 case.

9.    There is no agreement or understanding between myself, Chart Capital Management, and any nonaffiliated person or entity for sharing compensation received, or to be received, for services rendered in connection with the Debtors' chapter 11 cases. The fee structure provided in the Engagement Letter is reasonable and comparable in rates and in fact much lower than other comparable firms that render similar services in similar circumstances. The fee structure as provided in the Engagement Letter is reasonable, market-based, and designed to compensate fairly and to cover fixed and necessary expenses.

10.    Prior to the Petition Date, the Debtors paid me $3,535.00 for time billed and services provided prior to filing. I did not receive and am not holding any retainer post-petition.

### IV.    Indemnification and Disinterestedness

11.    The Engagement Letter contains standard indemnification language with respect to my services, which are customary and reasonable.

12.    In connection with the proposed retention by the Debtors, I undertook a review to determine whether any conflicts or relationships existed that might render myself or Chart Capital

Management not to be disinterested or to hold or represent an interest adverse to the Debtors.

Based upon my review, to the best of my knowledge, I am not aware of a fact or situation that

would represent a conflict of interest to the Debtors. Nor am I aware of any connection with the

with the Debtors, its creditors, other parties in interest, their respective counsel or accountants, or

the United States Trustee or any other person employed in the Office of the United States Trustee

that would render myself or Chart Capital Management not disinterested within the meaning of

section 101(14) of the Bankruptcy Code. If additional information is discovered that would require

additional disclosure, I will promptly file a supplemental disclosure with this Court as required by

Bankruptcy Rule 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 11, 2025.

CHART CAPITAL MANAGEMENT, LLC


By: */s/ Jeffrey Shulse*
Jeffrey Shulse
Principal

15