**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| West Brazos Stewart Food Markets, LLC, *et al.*,[1] | Case No. 25-80317 (ARP) |
| Debtors. | **(Jointly Administered)** |

**DEBTORS' APPLICATION TO EXPAND
FINANCIAL ADVISOR SERVICES AND EMPLOY JEFFREY SHULSE
AS CHIEF RESTRUCTURING OFFICER EFFECTIVE OCTOBER 1, 2025**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this Application (this "Application"):

**I.      Relief Requested**

1.      The Debtors seek authority to expand the scope of services of the Debtors' current financial advisor, Chart Capital Management LLC (the "Chart Capital Management") and employ Jeffrey Shulse as the Debtors' Chief Restructuring Officer ("CRO"). Since the Petition Date, the

---

[1] The Debtors in these chapter 11 cases are West Brazos Stewart Food Markets, LLC (85-2221853), West Brazos Stewart Property Holdings of Brazoria, LLC (85-2222120), and West Brazos Stewart Property Holdings of Sweeny, LLC (85-2262161). The Debtors' service address in these chapter 11 cases is PO Box 979, Brazoria, Texas 77422.

1

Debtors have been working to increase cash flow. So far, the Debtors have been successful in increasing their cash flow but the Debtors need to take an aggressive approach on 1) pricing strategy and 2) payroll reductions in order to realize sustained increased cash flow. The Debtors have determined that it is necessary to employ a CRO to help implement the price changes and, especially, make payroll changes to decrease payroll expense as part of the Debtors' goal of rightsizing their operation. The Debtors request authority to employ the CRO in accordance with the terms and conditions set forth in the Engagement Letter, dated October 15, 2025, and effective October 1, 2025 (the "Engagement Letter"), attached as **Exhibit A** to this Application. In support of this Application, the Debtors also attach the Declaration of Jeffrey Shulse as **Exhibit B** to this Application.

## II.    Jurisdiction and Venue

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of the Debtors' case is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b). This Court has the constitutional authority to enter a final order in this matter and the Debtors consent to entry of a final order by this Court.

3.      The bases for the relief requested are sections 327(a), 328(a), and 1107 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Bankruptcy Rule 2014-1.

## III.    Background

4.      The Debtors are a family-owned grocery store that has been serving Brazoria, Texas and the surrounding areas since 1975. The Debtors filed this case to deal with the debt on their real property by either selling their real property or restructuring the debt. The Debtors are also working to reduce certain expenses in order to increase cash flow and stabilize their business for the long-term. A more detailed description of these chapter 11 cases is set forth in the *Declaration of Tina*

*Stewart in Support of Chapter 11 Petitions and First Day Motions* at Docket No. 15.

5.     On July 11, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11, title 11 of the United States Code (the "Bankruptcy Code"). The Debtors remain in possession of their property and are operating as Debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for appointment of a trustee or examiner and no official committee has been established in this case.

6.     On September 5, the Court authorized the retention of Chart Capital Management as the Debtors' Financial Advisor. [Docket No. 83] (the "Order Approving Debtors' Financial Advisor").

### IV.     Chart Capital Management's Qualifications

7.     The Debtors have determined that expanding Chart Capital Management's services will significantly help the Debtors increase their cash flow. The proposed CRO has been and will continue to touch base with the Debtors daily to 1) monitor cash; 2) monitor strategic price adjustments across the Debtors' grocery store; and 3) make hard but strategic decisions with regard to the Debtors' payroll, all in an effort to realize sustained increase to the Debtors' cash flow in order to fund a chapter 11 plan.

8.     The proposed CRO, Jeffrey Shulse, has over 25 years of financial, legal and operational experience with small to mid-market companies in a variety of industries. Engagements have included:

    a.   financial modeling, cash flow forecasting, and DIP/financing analysis to support strategic decision-making during Chapter 11 proceedings, ensuring operational continuity and creditor confidence;

    b.   partnering with trustee, legal and restructuring advisors to develop and implement a court-approved reorganization plan, including debt restructuring, asset sales, and operational turnaround strategies;

    c.   managed financial communications to the creditor committees and debtor

3

representatives, providing transparency and updates on financial results, recovery estimates, and key restructuring milestones;

d.  developed detailed EBITDA projections, multi-year operating plans, and budgets for small start-up companies, delivering key financial models and analyses used in offering documents to attract private equity and private debt financing; and

e.  prior to advising the Debtors, Mr. Shulse served in a Financial Advisor capacity in the Free Speech Systems LLC bankruptcy in the Southern District of Texas, Case No. 22-60043.

## V.  Expanded Scope of Services

9.  In addition to the financial advisory services Chart Capital Management is already providing and in addition to the strategic pricing and payroll oversight and management, the proposed CRO will provide the following non-exhaustive list of services as necessary to assist the Debtors with their chapter 11 cases and exit plan:

a.  Oversee the restructuring or reorganization process, develop and supervise execution of the restructuring plan, and coordinate with stakeholders;

b.  Prepare, review, and file operational, financial, and restructuring plans, forecasts, cash flow analysis, budgets, and variance reports;

c.  Open, close, and maintain bank accounts; authorize deposits, disbursements, and transfers of funds consistent with court orders and debtor-in-possession cash control procedures;

d.  Negotiate, amend, modify, enforce, assign, or terminate contracts and leases on behalf of the debtor, subject to court approval as required;

e.  Pursue, settle, or compromise litigation, causes of action, claims or adversary proceedings, subject to court approval when required;

f.  Monitor and manage all restructuring or turnaround professionals and consultants, and coordinate with legal, financial, operational, tax, and other advisors; and

g.  Provide regular reports to the Debtor and to the Court, and attend hearings, creditor meetings, and status conferences as needed.

## VI.  No Duplication of Services

10.  The services to be provided by the proposed CRO will complement and not duplicate any service to be rendered by any other professional retained in this chapter 11 case.

## VII.   Chart Capital Management is Disinterested

11.     Pursuant to section 101(14), Chart Capital Management is not a creditor, equity security holder, or an insider of the Debtor, *see* 11 U.S.C. § 101(14)(A), is not and was not an officer, director, or employee of the Debtor. *See* 11 U.S.C. § 101(14)(B). Chart Capital Management does not hold any interest adverse to the Debtors or to any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. *See* 11 U.S.C. § 101(14)(C). To the best of Debtors' knowledge, information and belief, Chart Capital Management is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not have any connections with the Debtors, its creditors, other parties in interest, their respective counsel or accountants, or the United States Trustee or any other person employed in the Office of the United States Trustee and does not hold any interest adverse to the Debtors' estates. To the extent any new or relevant facts or relationships affecting the disinterestedness of Chart Capital Management during the period of its retention by the Debtors, the Debtors are advised that Chart Capital Management will use reasonable efforts to promptly file a supplemental declaration.

## VIII.   Professional Compensation and Expense Reimbursement

12.     The proposed CRO's rates will be the same as Chart Capital Management's rates that were approved in by the Order Approving Debtors' Financial Advisor. The proposed CRO's decision to accept this engagement is conditioned upon the ability to be retained in accordance with its customary terms and conditions of employment as provided in the Engagement Letter. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors may retain Chart Capital Management and the proposed CRO on reasonable terms and conditions. The terms and conditions set forth in the Engagement Letter, which are similar to the terms and conditions Chart

Capital Management offers to similar clients for similar services are reasonable.[2]

a. *Hourly Fees*. The fees for the services of Chart Capital Management and the proposed CRO will be based on actual hours incurred and the hourly rates for 2025 are below. Chart Capital Management and the proposed CRO proposes to bill in .5 increments during the pendency of these chapter 11 cases.

| Category of Work | Hourly Rate |
|---|---|
| Financial and Business Consulting/Analysis | $110.00 |
| Federal, State, or Sales Tax Research | $200.00 |
| Federal, States, or Sales Tax Preparation | $85.00 |
| M&A / Buy or Sell Consulting | $300.00 |

b. *Expenses*. In addition to compensation for professional services, Chart Capital Management will seek reimbursement for reasonable, necessary, documented out-of-pocket expenses incurred in connection with this chapter 11 case.

13. To the best of the Debtors' knowledge, there is no agreement or understanding between Chart Capital Management or the proposed CRO or any nonaffiliated person or entity for sharing compensation received to be received in connection with the services to be provided in these chapter 11 cases. Chart Capital Management will also be filing fee applications pursuant to section 330 and therefore any fees will be subject to review.

### IX.    Indemnification

14. The Engagement Letter contains standard indemnification language with respect to the services to be performed. The indemnification provisions contained in the Engagement Letter are customary and reasonable and negotiated by the Debtors and Chart Capital Management in

---

[2] Except that Chart Capital Management did give a discount on its hourly rate(s) for this engagement, which is reflected in the discounted rate(s) in the Engagement Letter.

good faith and at arm's length. The provisions related to indemnification in the Engagement Letter are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require the services of Chart Capital Management to successfully reorganize.

## X.     Relief and Authority

15.     The Debtors seek approval of the fee structure provided in the Engagement Letter pursuant to section 327(a) of the Bankruptcy Code which provides that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable term or conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or a contingent fee basis." 11 U.S.C. § 328(a). The Debtors believe the fee structure set forth in the Engagement Letter is reasonable and should be approved under section 327(a) of the Bankruptcy Code. Chart Capital Management will bill hourly in .5 increments. The expansion of Chart Capital Management's services and the employment of Jeffrey Shulse as the Debtors' CRO is in the best interest of the Debtors and their estates and is a sound exercise of the Debtors' business judgment.

16.     The Debtors request authority to employ Chart Capital Management as set forth in this Application and further request any additional relief to which they may be entitled.

Dated:  October 31, 2025          **West Brazos Stewart Food Markets, LLC et al.**

10/30/2025

By: /s/ Tina Stewart
Name: Tina Stewart, Manager

7

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Application will be served upon the parties listed below on October 31, 2025, via United States regular mail, postage paid first class and via the Court's ECF/PACER system:

**Debtor**

West Brazos Stewart Food Markets, LLC
PO Box 979
Brazoria, Texas 77422

**Office of the United States Trustee**
U.S. Trustee
515 Rusk Avenue, Suite 3516
Houston, TX 77002

/s/ *Genevieve M. Graham*
Genevieve M. Graham

8

## Exhibit A

### Engagement Letter



Chart Capital Management LLC
2339 Commerce Street #160
Houston TX 77002
EMAIL jshulse@chartcapitalmgmt.com

**West Brazos Stewart Food Markets, LLC**
**West Brazos Stewart Property Holdings of Brazoria**
**West Brazos Stewart Property Holdings of Sweeny**
**102 E San Bernard St**
**Brazoria, TX 77422**

October 15, 2025

## AMENDMENT TO JUNE 19, 2025 CONSULTING AGREEMENT

This Amendment (the "Amendment") is made as of 10/1/2025, by and between West Brazos Stewart Food Markets, LLC, West Brazos Stewart Property Holdings of Brazoria, and West Brazos Stewart Property Holdings of Sweeny (the "Client"), as debtors and debtors in possession, and Chart Capital Management LLC ("Consultant," formerly serving as Financial Analyst or "FA"), and amends that certain Consulting Agreement dated June 19, 2025 (the "Consulting Agreement").

**Recitals**
Under the Consulting Agreement, Consultant has been engaged to perform services as a Financial Analyst ("FA"). The parties now desire to expand and modify Consultant's role, so that Consultant may act as Chief Restructuring Officer ("CRO") in connection with the chapter 11 cases jointly administered as *In re West Brazos Stewart Food Markets, LLC*, case no. 25-80317 (the "Chapter 11 Cases"), and to revise the applicable terms accordingly. The parties acknowledge that this Amendment is subject to the entry of a bankruptcy court order approving the retention of the Consultant in the expanded CRO role.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and for other good and valuable consideration, the parties agree as follows:

**Effectiveness / Condition Precedent**
This Amendment, and the expanded role of Consultant as CRO, shall become effective only upon the entry of a court order approving the retention of Consultant in the CRO capacity (or approving this Amendment) (the "Approval Order"). If the Approval Order is not entered, this Amendment shall be of no force or effect and the Consulting Agreement shall remain in full force and effect in its prior form.

**Amended Scope of Services and Duties**
The Scope of Services of the Consulting Agreement is hereby expanded as follows (or supplemented via new subsection):

Consultant shall serve as Chief Restructuring Officer (CRO) of the Client, in Chapter 11 Cases, with responsibility for, and authority to, perform the following duties (subject always to oversight by the debtor, and the bankruptcy court):
   a. Oversee the restructuring or reorganization process, develop and supervise execution of the restructuring plan, and coordinate with stakeholders (creditors, committees, lenders).
   b. Prepare, review, and file operational, financial, and restructuring plans, forecasts, cash flow analyses, budgets,

Page **1** of **3**



and variance reports.

c. Open, close, and maintain bank accounts; authorize deposits, disbursements, and transfers of funds consistent with court orders and debtor-in-possession cash control procedures.

d. Negotiate, amend, modify, enforce, assign, or terminate contracts and leases on behalf of the debtor, subject to court approval as required.

e. Pursue, settle, or compromise litigation, causes of action, claims or adversary proceedings, subject to court approval when required.

f. Monitor and manage all restructuring or turnaround professionals and consultants, and coordinate with legal, financial, operational, tax, and other advisors.

g. Provide regular reports to the Debtor and to the Court, and attend hearings, creditor meetings, and status conferences as needed.

h. Any additional restructuring, oversight, control, or managerial duties mutually agreed (in writing) between the Consultant and the Debtor from time to time.

In all cases, Consultant shall act in a fiduciary capacity to the estate, consistent with the bankruptcy code, applicable court orders, and oversight obligations.

## Compensation, Billing, and Fee Application

Consultant shall be entitled to compensation for services rendered in the CRO capacity at the same rate(s) provided in the Fees and hourly Rates section of the Consulting Agreement and on the same terms of Billing and Payment, as agreed by the parties and approved by the Court.

The parties agree that compensation and reimbursements payable to Consultant under this Amendment shall enjoy administrative priority to the extent permitted by applicable law, but always subject to final Court review and allowance.

## Indemnification and Liability

The indemnification, defense, and limitation of liability provisions in the Consulting Agreement shall be expanded or restated to cover Consultant in the capacity of CRO, with the same or better protective terms as those provided to professionals retained in the Chapter 11 Cases (or as approved by the Court).

Company shall indemnify Consultant (and hold Consultant harmless), to the fullest extent permitted by applicable law, from and against any and all claims, liabilities, losses, costs, expenses, judgments, fines, penalties, or damages incurred in connection with the performance of Consultant's duties as CRO, provided that Consultant acted in good faith, in a manner reasonably believed to be within the scope of authority, and in the best interest of the estate.

The obligation to indemnify and advance expenses shall survive termination of the Consulting Agreement or this Amendment.

The indemnification shall be subject to any limitations or caps set by the Court, and Consultant shall cooperate with the Company's defense of any third-party claims. Nothing in this Amendment shall be construed to limit Consultant's liability for breaches of fiduciary duty, gross negligence, willful misconduct, or fraud.

## Representations, Conflicts, and Disclosures

Consultant reaffirms all representations and warranties in the Consulting Agreement and, in addition, represents and warrants:



a. Consultant is (and will remain) disinterested under §327, and does not hold or represent any interest adverse to the estate with respect to the matters on which Consultant will act.

b. Consultant has made full and fair disclosure of any relationships, prior engagements, or conflicts that might bear on Consultant's disinterestedness or eligibility.

c. Consultant will comply with all disclosure obligations to the Court, the United States Trustee, creditors' committees, and other stakeholders.

d. Consultant's retention in the CRO role will not violate any rule of professional conduct, insolvency ethics, or other applicable statute/regulation.

### Term and Termination

The effective term of the CRO role under this Amendment shall run until plan confirmation date, unless earlier terminated as provided herein or by Court order.

Either party may terminate Consultant's CRO appointment (with respect to future services) upon 15 days' written notice, subject to Court approval (if required).  Termination shall not relieve the Company's obligation to pay for services rendered and reimburse expenses incurred prior to termination (subject to Court allowance).  Upon termination, Consultant shall assist in a smooth transition to a successor CRO, if any.

All other sections of the Consulting Agreement and associated Terms and Conditions remain unchanged

### AGREED AND ACCEPTED:

**Jeffrey Shulse**
Chart Capital Management LLC

**Tina Stewart**
West Brazos Stewart Food Markets LLC
West Brazos Stewart Property Holdings of Brazoria
West Brazos Stewart Property Holdings of Sweeny

**Dwain Stewart**
West Brazos Stewart Food Markets LLC
West Brazos Stewart Property Holdings of Brazoria
West Brazos Stewart Property Holdings of Sweeny

**Exhibit B**

**Declaration of Jeffrey Shulse**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| West Brazos Stewart Food Markets, LLC, *et al.*,[3] | Case No. 25-80317 (ARP) |
| Debtors. | **(Jointly Administered)** |

**DECLARATION OF JEFFREY SHULSE IN SUPPORT OF DEBTORS' APPLICATION
TO EXPAND FINANCIAL ADVISOR SERVICES AND EMPLOY JEFFREY SHULSE
AS CHIEF RESTRUCTURING OFFICER EFFECTIVE OCTOBER 1, 2025**

I, Jeffrey Shulse, declare pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1.      I am the principal consultant at Chart Capital Management, LLC, which has its principal place of business at 2339 Commerce St., Houston, TX 77002.

2.      I submit this declaration in support of the *Debtors' Application to Expand Financial Advisor Services and Employ Jeffrey Shulse as Chief Restructuring Officer Effective October 1, 2025* (the "Application")[4] by which the Debtors seek to expand the services of Chart Capital Management as of October 1, 2025, and employ Jeffrey Shulse as the Debtors' CRO, on the terms and conditions set forth in the Engagement Letter, a copy of which is attached to the Application as **Exhibit A**. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration.

17.      I am well qualified to serve as the Debtors' CRO and represent the Debtors'

---

[3] The Debtors in these chapter 11 cases are West Brazos Stewart Food Markets, LLC (85-2221853), West Brazos Stewart Property Holdings of Brazoria, LLC (85-2222120), and West Brazos Stewart Property Holdings of Sweeny, LLC (85-2262161). The Debtors' service address in these chapter 11 cases is PO Box 979, Brazoria, Texas 77422.

[4] Capitalized terms not defined in this Declaration are defined in the Application.

11

interests in these chapter 11 cases. Based on the complexities associated with administering these chapter 11 cases and the estates, particularly where the Debtors need to aggressively increase cash flow through strategic price adjustments and payroll reductions, the Debtors have determined that they require the assistance of a professional with specialized experience in bankruptcy, operations, and financial advisory services.

18.     I have over 25 years of financial, legal and operational experience with small to mid-market companies in a variety of industries.  My engagements have included:

    a.  financial modeling, cash flow forecasting, and DIP/financing analysis to support strategic decision-making during Chapter 11 proceedings, ensuring operational continuity and creditor confidence;

    b.  partnering with trustee, legal and restructuring advisors to develop and implement a court-approved reorganization plan, including debt restructuring, asset sales, and operational turnaround strategies;

    c.  managed financial communications to the creditor committees and debtor representatives, providing transparency and updates on financial results, recovery estimates, and key restructuring milestones; and

    d.  developed detailed EBITDA projections, multi-year operating plans, and budgets for small start-up companies, delivering key financial models and analyses used in offering documents to attract private equity and private debt financing.

3.     Prior to serving as Financial Advisor to the Debtors, I served in a Financial Advisor capacity in the Free Speech Systems LLC bankruptcy in the Southern District of Texas, Case No. 22-60043.

## I.     Scope of Services

4.     As set out in the Application, as CRO, in addition to managing and overseeing strategic price adjustments and payroll reductions, I will provide the following services:

    a.  Oversee the restructuring or reorganization process, develop and supervise execution of the restructuring plan, and coordinate with stakeholders;

    b.  Prepare, review, and file operational, financial, and restructuring plans, forecasts, cash flow analysis, budgets, and variance reports;

12

c. Open, close, and maintain bank accounts; authorize deposits, disbursements, and transfers of funds consistent with court orders and debtor-in-possession cash control procedures;

d. Negotiate, amend, modify, enforce, assign, or terminate contracts and leases on behalf of the debtor, subject to court approval as required;

e. Pursue, settle, or compromise litigation, causes of action, claims or adversary proceedings, subject to court approval when required;

f. Monitor and manage all restructuring or turnaround professionals and consultants, and coordinate with legal, financial, operational, tax, and other advisors; and

g. Provide regular reports to the Debtor and to the Court, and attend hearings, creditor meetings, and status conferences as needed

5. I have the experience and expertise to assist the Debtors in Application and the Engagement Letter dated October 15, 2025, and effective October 1, 2025.

## II.    No Duplication of Services

6. I believe that the services to be provided under the Engagement Letter will complement and not duplicate the services to be rendered by any other professional retained in these chapter 11 cases.

7. The decision to accept this retention to provide services to the Debtors is conditioned upon the ability to be retained in accordance with customary terms and conditions of employment, compensation, and reimbursement for out-of-pocket expenses in accordance with customary billing practices as set forth in the Engagement Letter.

## III.    Professional Compensation and Reimbursement of Expenses

8. I will bill hourly for my services in .5 hour increments.

a. *Hourly Fees*. The fees for the services of Chart Capital Management will be based on actual hours incurred and the hourly rates for 2025 are below.

| Category of Work | Hourly Rate |
|---|---|

13

| | |
|---|---|
| Financial and Business Consulting/Analysis | $110.00 |
| Federal, State, or Sales Tax Research | $200.00 |
| Federal, States, or Sales Tax Preparation | $85.00 |
| M&A / Buy or Sell Consulting | $300.00 |

**b.** *Expenses*. In addition to compensation for professional services, Chart Capital Management will seek reimbursement for reasonable, necessary, documented out-of-pocket expenses incurred in connection with this chapter 11 case.

9. There is no agreement or understanding between myself, Chart Capital Management, and any nonaffiliated person or entity for sharing compensation received, or to be received, for services rendered in connection with the Debtors' chapter 11 cases. The fee structure provided in the Engagement Letter is reasonable and comparable in rates and in fact much lower than other comparable firms that render similar services in similar circumstances. The fee structure as provided in the Engagement Letter is reasonable, market-based, and designed to compensate fairly and to cover fixed and necessary expenses.

### IV.    Indemnification and Disinterestedness

10. The Engagement Letter contains standard indemnification language with respect to my services, which are customary and reasonable.

11. In connection with the proposed retention by the Debtors, I undertook a review to determine whether any conflicts or relationships existed that might render myself or Chart Capital Management not to be disinterested or to hold or represent an interest adverse to the Debtors. Based upon my review, to the best of my knowledge, I am not aware of a fact or situation that would represent a conflict of interest to the Debtors. Nor am I aware of any connection with the

14

with the Debtors, its creditors, other parties in interest, their respective counsel or accountants, or the United States Trustee or any other person employed in the Office of the United States Trustee that would render myself or Chart Capital Management not disinterested within the meaning of section 101(14) of the Bankruptcy Code. If additional information is discovered that would require additional disclosure, I will promptly file a supplemental disclosure with this Court as required by Bankruptcy Rule 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 30, 2025.
10/30/2025

CHART CAPITAL MANAGEMENT, LLC

*Jeffrey Shulse*
ID oDTRrVntZsqpSwPb5z2apaY4

By: /s/ Jeffrey Shulse
    Jeffrey Shulse
    Principal

15

# eSignature Details

**Signer ID:**              **oDTRrVntZsqpSwPb5z2apaY4**
Signed by:              Jeffrey Shulse
Sent to email:          jshulse@chartcapitalmgmt.com
IP Address:            107.116.165.56
Signed at:             Oct 30 2025, 6:24 pm CDT

**Signer ID:**              **2Vs8Nejx98XTaGhjBQpFciuA**
Signed by:              Tina Stewart
Sent to email:          tinas52341@gmail.com
IP Address:            107.115.5.124
Signed at:             Oct 30 2025, 8:00 pm CDT